IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-117-SLR |
| | ) | |
| SEAN D. WOODSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

## I. INTRODUCTION

On February 17, 2010, a federal grand jury returned a superseding indictment and notice of forfeiture against defendant Sean D. Woodson for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (D.I. 18) Defendant has moved to suppress physical evidence, arguing that plaintiff has not demonstrated that there was reasonable suspicion to support the warrantless probation search nor established that he voluntarily consented to the search. (D.I. 21) An evidentiary hearing was conducted on April 29, 2010.[1] (D.I. 34) The matter is fully briefed. (D.I. 27, 29, 30) The court has jurisdiction pursuant to 18 U.S.C. § 3231.

---

[1]Testifying on behalf of plaintiff was Brian Payton ("Payton"), a probation and parole officer ("probation officer") for the Delaware Department of Correction. (D.I. 34 at 2-3) As a probation officer, Payton's duties included supervising anyone placed on probation by the Delaware Court system. (D.I. 34 at 3) During his 13 years as a probation officer, Payton has conducted numerous searches of probationers' vehicles and, on several occasions, discovered drugs or drug paraphernalia in those vehicles. (*Id.* at 13)

## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. As a result of a burglary in the third degree conviction, defendant was sentenced, in February 2009, to a term of probation by the Superior Court of Delaware in and for Sussex County. (GX1) The sentencing order provides, in part, that: (1) defendant is placed in the custody of the Department of Correction for 3 years at supervision level 5, with credit for 225 days previously served; (2) defendant's sentence is suspended for one year at supervision level 3; and (3) the probation period runs concurrent with any probation then being served.

2. On February 8, 2009, defendant signed a "conditions of supervision form" that identified the requirements with which he had to comply. (GX2) Included among the mandatory conditions is the following:

> You are hereby advised that under law, the court or the Board of Parole may at any time revoke for cause, modify the conditions of supervision, reduce the period of supervision and may issue a warrant/capias for any violation during the period of supervision. YOU ARE SUBJECT TO ARREST AND TO A SEARCH OF YOUR LIVING QUARTERS, PERSON OR VEHICLE WITHOUT A WARRANT AT ANY TIME BY A PROBATION/PAROLE OFFICER. I have read or have had read to me the [a]bove conditions of supervision. I consent to and fully understand their content and meaning.

(GX2 at 2 (emphasis in original); D.I. 34 at 6)

3. In March or April 2009, Payton was assigned to supervise defendant's probation. (D.I. 34 at 4-5) On October 8, 2009, defendant was scheduled to appear for a prearranged office visit with Payton. (*Id.* at 8) At the time, defendant, a level 2

probationer, was required to report, once a month, for an office visit with Payton. In preparation for their meeting, Payton conducted a NCIC computer check, "which is a national database for criminal information" for any new information on defendant. (*Id.* at 8) The NCIC check revealed that defendant had an outstanding arrest warrant issued by the State of Maryland for burglary and theft charges. (*Id.* at 9)

4. When defendant arrived at approximately 10:00 a.m., Payton took defendant into custody on the Maryland arrest warrant. Consistent with standard operating procedure for offenders placed into custody before transport to prison, Payton placed defendant in handcuffs, conducted a pat-down search and removed defendant's personal property. (*Id.* at 10) Payton removed a set of keys and an open pack of cigarettes from defendant. (*Id.* at 10, 20)

5. Payton looked inside the cigarette pack and observed nine, loose Percocet pills.[2] (*Id.* at 10-11) Payton knew that Percocet was a prescription medication and that it was illegal to carry Percocet pills loose and outside of their prescription bottle. (*Id.* at 11) From his experience with probationers, Payton knew that it is common for people who deal or abuse drugs to not carry the drugs in their prescription bottle. (*Id.* at 29) Payton did not recall defendant having a prescription for Percocet.[3] Before defendant

---

[2] In his experience, Payton has observed offenders abuse prescription pills like Percocet. (*Id.* at 12)

[3] According to Payton, "[a]ny time an offender is on probation, they're required to report that they are taking prescription pills." (*Id.* at 23) However, the conditions of probation form signed by defendant did not require him to advise whether he was taking a prescription drug or if he had obtained a prescription. (*Id.* at 24) Prior to administration of a drug test, probationers are asked if they are taking any prescription drugs. Defendant was not scheduled to receive a drug test at the October 8 visit. (*Id.* at 24-25)

3

was taken into custody, Payton did not inquire whether he had a prescription for Percocet. (*Id.* at 24-25)

6. Payton contacted his supervisor, Deborah Meade, informed her of the Percocet and requested permission to conduct a search of defendant's vehicle. (*Id.* at 12) Payton surmised that defendant had driven himself to the visit because he showed up alone with a set of car keys worn around his neck. (*Id.* at 13) Payton concluded a search of defendant's vehicle was necessary because, in his experience, loose pills concealed in a manner like those found in the cigarette pack is indicative of drug use or drug dealing and more pills might be found in the vehicle. (*Id.* at 12)

7. Payton discussed the search with Meade, using an "Arrest/Search Checklist" to evaluate whether a search was necessary. (*Id.* at 13; GX3) At the end of their discussion, Meade advised Payton that there was reasonable suspicion that contraband might be found and authorized the search of the vehicle. (*Id.* at 13)

8. Payton conducted a DELJIS investigation in the Delaware justice system to determine whether defendant had a vehicle registered in his name. (*Id.* at 14) Payton discovered that defendant owned a 1988 Chevrolet Celebrity ("the vehicle"). (*Id.* at 14) Payton, two other probation officers and Meade set out to locate the vehicle. They discovered the vehicle parked in a lot approximately two blocks away from the probation office. (*Id.* at 14, 27-28) Using defendant's keys, the officers opened the vehicle and searched it. (*Id.* at 14-15)

9. Next, Payton used defendant's keys to open the truck. Inside the trunk, officers discovered a locked, white "firebox"[4] and used defendant's keys to open it. (*Id.* at 15) According to Payton, it is standard operating procedure to open locked containers during a search, especially when looking for something as small as a Percocet pill. (*Id.* at 28) Inside the firebox, officers observed a loaded .357 handgun, several baggies of suspected marijuana, a social security card (belonging to defendant) and several pieces of drug paraphernalia. (*Id.* at 15, 22-23, 28) After finding the handgun, Payton stopped the search and contacted Dover Police Department. (*Id.* at 16)

## III. CONCLUSIONS OF LAW

1. Once a defendant has challenged the legality of a warrantless search and seizure, the burden is on the government to demonstrate, by a preponderance of the evidence, that the search was conducted pursuant to one of the exceptions to the warrant requirement. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974); *United States v. Williams*, 400 F. Supp. 2d 673, 677 (D. Del. 2005).

2. The court is charged with reviewing the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993); *United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003); *United States v. Williams*, 400 F. Supp. 2d 673.

---

[4]Alternately described as a "safe."

3. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures." U.S. Const. amend. IV. The "touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (internal citations omitted).

4. Generally, such a balance mandates that a warrant be obtained upon a showing of probable cause before a residence is searched. *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005). However, when "a parolee[5] is involved and has signed a consent agreement . . . , both sides of the balance are affected: the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased." *Id.* Consequently, "no more than reasonable suspicion" is required to justify a search in these circumstances. *Id.; United States v. Randle*, 639 F. Supp. 2d 560, 562 (E.D. Pa. 2009).

5. In determining whether reasonable suspicion exists, courts consider the "totality of the circumstances to determine whether the officer had a particularized and objective basis for suspecting legal wrongdoing." *Williams*, 417 U.S. at 376; *United States v. Cottman*, 497 F. Supp. 2d 598, 602 (D. Del. 2007).

6. Based on the totality of the circumstances of this case, the court concludes that Payton had reasonable suspicion to search defendant's vehicle for contraband. To

---

[5]There is "no constitutional difference between probation and parole for purposes of the Fourth amendment." *United States v. Williams*, 417 F.3d at 376 n.1.

that end, the court credits the uncontradicted testimony of Payton. Specifically, Payton knew that defendant had been taken into custody for an active arrest warrant and Payton had discovered the loose Percocet pills concealed within defendant's cigarette pack. Payton was unaware of defendant's having a prescription for the Percocet pills. Payton recognized, based on his 13 years of experience as a probation officer, that possession of loose Percocet pills suggested that defendant was using or dealing drugs. From previous searches of probationers' vehicles, Payton knew that contraband is often hidden in vehicles. Further, after conferring with his supervisor and reviewing the search checklist together, Payton was authorized to conduct the search.

6. Because the court concludes that the search of defendant's vehicle was supported by reasonable suspicion in light of the totality of the circumstances, the court concludes that any evidence obtained as a result of the search was lawfully seized.[6]

## IV. CONCLUSION

At Wilmington this 14th day of July, 2010,

IT IS ORDERED that:

1. Defendant's motion to suppress (D.I. 21) is denied.

2. A telephone status conference is scheduled to commence on **Tuesday, August 3, 2010 at 4:30 p.m.**, with the court initiating said call.

3. The time between this order and the teleconference shall be excludable

---

[6]In so finding, it is unnecessary to reach plaintiff's alternative argument, e.g., whether plaintiff demonstrated that defendant voluntarily consented to the search of his vehicle.

under the Speedy Trial Act in the interests of justice, 18 U.S.C. § 3161, et seq.

_____
United States District Judge